# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MELINDA PIPER,** | * |
| *Plaintiff*, | * |
| v. | * Case No. RWT 17-cv-863 |
| **MEADE & ASSOCIATES, INC.,** | * |
| *Defendant*. | * |

## MEMORANDUM OPINION

### 1. The Consequences of Lessons Not Learned

This is a case that could aptly be described as the tale of "the horse that was led to water, but would not drink." Our respected State colleague, the late Chief Judge Richard Gilbert of the Court of Special Appeals of Maryland, aptly noted that procedural rules are "the lawyer's compass and serve to help him steer through the narrows of pleading, pass the rocks of default, around the shoals of limitation and safely into the harbor of judgment. It is a reckless sailor, indeed, who puts to sea without a compass and it is a reckless lawyer who fails to familiarize himself with" the applicable procedural rules before filing and trying a case. *Colonial Carpets, Inc. v. Carpet Fair, Inc.*, 36 Md. App. 583, 584, 374 A.2d 419, 420–21 (1977). He went on to lament that, notwithstanding the importuning of appellate courts that the

> rules of procedure are not to be considered as mere guides or Heloise's helpful hints to the practice of law, but rather precise rubrics that are to be read and followed, admonitions go unheeded by some practitioners. When that occurs, we are left to wonder whether we are engaged in an endless struggle, just as waves beat upon the shore, fall back and then repeat over and over ad infinitum.

*Id.* at 584–85, 374 A.2d at 421.

In the federal court system, the basic requirements for a complaint are contained in Rule 8(a) of the Federal Rules of Civil Procedure which states that a "pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . ."

These basic requirements of Rule 8(a) were clarified by the decisions of the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In order to satisfy these minimum pleading requirements, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although it is true that Courts must accept "all well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999), courts are not required to use a divining rod to supply missing, essential facts when testing the sufficiency of a complaint. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). Therefore ". . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 386 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

A plaintiff must meet the *Twombly-Iqbal* pleading standard for all elements of a cause of action, including jurisdiction and standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [the elements of standing]."). Because the standing elements

> are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation.

*Id.* At the pleading stage, although "general factual allegations of injury resulting from defendant's conduct may suffice," *id.* at 561, it is the court's task to evaluate whether the pleadings "allege[] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue," *John v. Whole Foods Market Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016).

For many years, Rule 15 of the Federal Rules of Civil Procedure has provided that courts "should freely give leave (to amend a pleading) when justice so requires." Fed. R. Civ. P. 15(a)(2). However, until this rule was amended in 2009, approval of the court was required in order to amend a pleading once a responsive pleading is filed. This changed, however, when Rule 15 was amended to its present form in 2009 so as to allow a pleader an opportunity to recover from a "whoops" moment when a complaint is challenged for its sufficiency by the opposing party. Under the revised Rule 15, a party has the *absolute right, without leave of court*, to

> amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Thus, when a pleader may have overlooked some of the basic requirements of pleading a cause of action or asserting jurisdiction in federal court, Rule 15 provides an absolute second chance, and an opportunity to convert a failing grade in to a passing one. In this case, the Court is faced with a horse that was led to water and refused to drink, and there are inevitable consequences that flow therefrom.

## 2. **Procedural Background**

The reluctant horse in this drama is the Plaintiff, Melinda Piper ("Piper"), a Maryland resident who brought a bare-bones, single-count Complaint against the Defendant, Meade & Associates, Inc. ("Meade"), an Ohio-based debt collector, for damages, as well as declaratory and injunctive relief, arising from Meade's alleged violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (2012). ECF No. 1.

In her Complaint, Piper claims that, on an unknown date, Meade began attempting to collect an alleged consumer debt owed by her ("Alleged Debt"). *Id.* ¶ 8. The Alleged Debt was owned by Harris Teeter and was allegedly incurred for personal purposes, but Piper did not identify what those purposes were in her Complaint. *See id.* ¶ 10. At an unknown time, Meade reported the Alleged Debt on Piper's credit report. *Id.* ¶ 12. On September 22, 2016, Piper wrote a letter to Meade to dispute the Alleged Debt. *Id.* ¶ 13. On December 11, 2016, Piper again examined her credit report and found that Meade had re-reported the credit account after it received Piper's dispute letter, but failed to list the account as "disputed by consumer" as required by the FDCPA. *Id.* ¶ 14. Piper alleges in her Complaint, without further detail, that "[a]s a result of Defendant's deceptive, misleading and unfair debt collection practices, Plaintiff has been damaged." *Id.* ¶ 15.

Meade filed a Motion to Dismiss Piper's Complaint on the grounds that (1) under Federal Rule of Civil Procedure 12(b)(1) the Court lacks subject matter jurisdiction, and, in the alternative, (2) under Federal Rule of Civil Procedure 12(b)(6) Piper failed to state a claim for relief under the FDCPA. ECF No. 9. Piper filed a timely Opposition to Defendant's Motion to Dismiss asserting that (1) Piper's injury was the "impact" the Alleged Debt had on her credit report, and (2) the Alleged Debt was for personal or household purposes because it was owned by Harris Teeter, a grocery store chain. ECF No. 12 at 4, 14. Neither of these factual allegations was included in the original Complaint, nor was any amended complaint filed. *See* ECF No. 1. Meade filed a timely Reply to Piper's Opposition. ECF No. 13. The Court held a hearing on the Motion to Dismiss on September 6, 2017.

Meade's Motion put Piper squarely on notice of the deficiencies in her pleading. Moreover, an almost identical complaint filed by Piper's attorney was also dismissed on grounds of insufficient pleading, about a month before the filing of Meade's 12(b) Motion in this case, *see Coleman v. Charlottesville Bureau of Credits, Inc.*, No. 3:17CV147-HEH, 2017 WL 1381666 (E.D. Va. Apr. 17, 2017). These facts make Piper's failure to take advantage of the opportunity Rule 15 gave her to amend her Complaint inexplicable. Instead of amending her Complaint, Piper included additional factual allegations in her Opposition, which the Court simply cannot consider in its evaluation of the sufficiency of her pleadings. *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (holding that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint").

### 3. Subject Matter Jurisdiction

Article III of the United States Constitution limits the judicial power of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2; *see Lujan*, 504 U.S. at 559. Accordingly, subject matter jurisdiction requires a justiciable case or controversy within the meaning of Article III. *See Allen v. Wright*, 468 U.S. 737, 750–51 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). Standing constitutes one component of justiciability. *Lujan*, 504 U.S. at 560–61. Whether a plaintiff has standing presents a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

To establish standing, a plaintiff seeking to invoke this Court's jurisdiction bears the burden of demonstrating: (1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61 (citations and quotation marks omitted). In order to satisfy the first prong, the injury in fact requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560).

When analyzing whether the plaintiff has suffered an injury in fact under the FDCPA based on her complaint, courts will first determine if the plaintiff has sufficiently pleaded an actual harm has been suffered. *See Coleman*, 2017 WL 1381666, at *3–4. If no actual harm is alleged, the court will determine if ". . . the Plaintiff has sufficiently pleaded that she faces a 'risk of real harm' that is likely to occur in the future." *Id.* at *4 (quoting *Spokeo*, 136 S. Ct. at 1549). If the plaintiff is not at risk of a real harm that is likely to occur in the future, a plaintiff can

6

assert standing if, and only if, "she can demonstrate that the statutory provisions alleged to have been violated in her Complaint are of the type where the legislature has codified causes of action with intangible harms where recovery was long permitted at common law." *Id.* at *4 (citing *Spokeo*, 136 S. Ct. at 1549).

Piper's Complaint alleges that because Meade violated various provisions of the FDCPA by failing to list her account as "disputed by consumer," she "has been damaged and is entitled to damages in accordance with the FDCPA." ECF No. 1, ¶¶ 15, 18. Piper did not specify in her Complaint, however, any concrete harm suffered as a result of Meade's collection efforts that can meet the injury in fact requirement. Merely stating that Piper has been "damaged" is a conclusory statement that makes no factual allegation of any actual harm, any risk of real harm in the future, or any violation that would meet the *Spokeo* injury in fact standard.

In her Opposition, Plaintiff asserts for the first time that she "incurred statutory and actual damages to her credit score." ECF No. 12 at 2. She claims actual injury because she "has incurred a negative impact to her credit score." *Id.* at 4. This Court has not yet determined whether an allegation of a lowered credit score is sufficient as an injury in fact for standing requirements under the FDCPA. *Daughtry v. Receivables Outsourcing, LLC*, No. 8:16-cv-02403-PWG, memo. op. at 4 (D. Md. Jan. 17, 2017). Judge Grimm of this Court has held, however, that in the context of the Maryland Consumer Debt Collection Act, at least, "'harm to [the plaintiff's] credit score' is a sufficient allegation of damages to survive a motion to dismiss a claim." *Id.*

Here, however, this Court need not address whether in the context of the FDCPA an alleged lowered credit score suffices as an injury in fact because the Plaintiff failed to plead in her Complaint that her score was lowered or how failing to mark the account as "disputed"

7

caused a lower score. In fact, during oral argument, Piper's attorney admitted that there was no factual basis for alleging that a lowering of the score had occurred. Oral Arg. 16:20-40, (17-cv-0863) (Sept. 6, 2017). When asked whether he had "personally looked at [Piper's FICO score] with [Piper] and ascertained that her FICO score did change because of this reporting," Piper's attorney responded, "No. I did not." *Id.*

Piper's reference to the most recent disposition of *Spokeo*, on remand to the Ninth Circuit, also does not save her inadequate Complaint. Although the Ninth Circuit, in its application of the Supreme Court's standing requirements as set out in *Spokeo*, held that a violation of the Fair Credit Reporting Act implicated consumers' concrete interests, it made clear that "a plaintiff will not be able to show a concrete injury simply by alleging that a consumer-reporting agency failed to comply with one of FCRA's procedures." *Robins v. Spokeo, Inc.*, No. 11-56843, 2017 WL 3480695, at *6 (9th Cir. Aug. 15, 2017). The court must examine the nature of the violation "to ensure that they raise a risk of harm." *Id.* In that case, the Ninth Circuit found that the plaintiff's long list of alleged specific inaccuracies for which the defendant reporting agency was responsible was enough for the court to infer material harm. *See id.* at *7. In this case, however, as already discussed above, Piper made no factual allegation in her Complaint of *any specific injury* whatsoever at the hands of Meade resulting from a single alleged inaccuracy from which the Court could infer any kind of material harm.

Based on the foregoing reasons, Piper has failed to adequately plead that she has suffered a sufficiently "concrete and particularized" harm that is "actual and imminent, not conjectural or hypothetical" to confer Article III standing, and the Court must dismiss for want of subject matter jurisdiction. *See Lujan*, 504 U.S. at 560. Although the Court could end its opinion here,

8

it will briefly address Meade's Rule 12(b)(6) argument as well to demonstrate that this Complaint, even if this Court were to have jurisdiction, simply has no legs upon which to stand.

### 4. Failure to State a Claim

Meade argues that, even if this Court has jurisdiction, Piper's Complaint is nonetheless subject to dismissal because she "has not alleged that she incurred a consumer debt" as required by the FDCPA. ECF No. 9-1 at 7–9. This Court agrees.

The FDCPA prohibits abusive, deceptive, or unfair consumer debt collection practices. *See* 15 U.S.C. § 1692 (2012). To state a claim under the FDCPA, the consumer must allege in her complaint that: (1) the defendant is a "debt collector" under the FDCPA; (2) the consumer is the "object of a collection activity arising from consumer debt"; and (3) "the defendant engaged in debt collection activity prohibited by the FDCPA." *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 524 (D. Md. 2013) (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012)).

Under the FDCPA, a consumer "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). To adequately plead facts showing a consumer debt, a plaintiff *must do more than merely track the statute's language*. *Alston v. Cavalry Portfolio Servs., LLC*, No. 8:12-cv-03589-AW, 2013 WL 665036, at *3 (D. Md. Feb. 22, 2013) (holding that plaintiff's allegation that the debt was consumer in nature because it "'arose from services provided by HSBC, which were primarily for family, personal, or household purposes' warrants no weight as it is merely a 'formulaic recitation of the elements of a cause of action.'"). Facts describing the owner of the consumer debt have been held by courts as *prima facie* evidence of consumer debt

9

to survive a motion to dismiss for failure to state a claim, but only when the nature of the debt is clear from either the owner's name or additional clarifying language. *Compare Urquiaga v. Fin. Bus. & Consumer Sols., Inc.*, No. 16-cv-62110-BLOOM/Valle, 2016 WL 6877735, at *3 (S.D. Fla. Nov. 22, 2016) (holding allegation that "the debt concerns a student loan" owed to "Career Education Corp" sufficient when clarifying language was incorporated by reference in the complaint), *with Alston*, 2013 WL 665036, at *1–3 (holding that only stating the owner of the debt in the complaint was insufficient because "a person could just as readily use a credit card in his or her name to incur, among other things, business expenses"), *and Dokumaci v. MAF Collection Servs.*, No. 8:09-cv-02488-T-24-TGW, 2010 WL 2560024, at *2 (M.D. Fla. June 17, 2010) (pleading that "Mease Hospital was the original creditor . . . does not sufficiently allege facts to . . . [describe] the nature of the debt. This fact only reveals the identity of the creditor, not the nature of the debt.").

In her Complaint, Piper alleges only that "Defendant began collection activities on an alleged consumer debt from the Plaintiff ('Alleged Debt')" and that "[t]his debt was incurred as a financial obligation that was primarily for personal, family or household purposes and is therefore a 'debt' as that term is defined by 15 U.S.C. § 1692a(5)." ECF No. 1, ¶¶ 8–9. As the owner of the debt, Plaintiff claims that the "[a]lleged Debt was owned by Harris Teeter [and] was incurred for personal purposes." *Id.* ¶ 10. These are the extent of the facts provided in the Complaint that detail the nature of the debt.

In her Opposition, Piper again attempts to bolster her bare-bones pleadings by averring that "[a] view of the transaction as a whole reveals that Ms. Piper incurred this debt as a personal grocery bill." ECF No. 12 at 13. She further asks the Court to "take notice of the fact that Harris Teeter, the original creditor here, is a grocery store." *Id.* Accordingly, Piper argues, "[i]t is

common sense that grocery bills will fall under the category of personal or household debt." *Id.* This argument fails, first and foremost, because the Court can only consider the well-pleaded allegations in the Complaint and, as noted above, is not required to use a divining rod to supply missing, essential facts. *See Edwards*, 178 F.3d at 243. The alleged fact that the debt was from a personal grocery store is nowhere in the Complaint. *See* ECF No. 1. The argument also fails because it is common knowledge—despite Plaintiff's contention otherwise—that debts from grocery stores, including those from Harris Teeter, are *also regularly incurred for business purposes* in addition to personal and household purposes, as was the case with the personal credit card debt in *Alston*.

This Court—based solely on the facts pled in the Complaint and not those subsequently and improperly inserted into the record in Piper's Opposition—cannot reasonably infer that the Alleged Debt constitutes a consumer debt. There is nothing in the Complaint beyond conclusory statements that the debt was "incurred for personal purposes" and the owner of the debt was Harris Teeter. ECF No. 1, ¶ 10. Unlike in *Urquiaga*, the Court here cannot discern whether the debt was consumer in nature or for business purposes, and the Complaint does not incorporate any other document by reference through which the Court could consider any clarifying language. Even if the Court accepts Piper's allegations in her Complaint as true, the sole factual piece of information in the Complaint that the debt was owned by Harris Teeter simply does not constitute an adequate averment under Rule 8 that the nature of the debt meets the statute's definition. The mere recitation of the statutory language that the debt was "incurred as a financial obligation that was primarily for personal, family or household purposes and is therefore a 'debt' as that term is defined by 15 U.S.C. § 1692a(5)," constitutes "a legal

conclusion couched as a factual allegation" and the Court is "not bound to accept [it] as true." *See Papasan*, 478 U.S. at 286.

Therefore, even if the Plaintiff has standing, her Complaint must be dismissed because "the factual allegations in the [C]omplaint are [not] 'enough to raise a right to relief above the speculative level.'" *See Monroe*, 579 F.3d at 386 (quoting *Andrew*, 561 F.3d at 266). Accordingly, the Complaint must be dismissed in its entirety.

## 5. Conclusion

For the foregoing reasons, Meade's Motion to Dismiss Complaint (ECF No. 9) will be granted. A separate Order will follow.

Date: October 10, 2017                                /s/
                                            ROGER W. TITUS
                                            UNITED STATES DISTRICT JUDGE